1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10

11   THOMAS WALKER, et al.,                              )
                                                       )   Case No. 2:14-cv-01475-JAD-NJK
12                              Plaintiff(s),            )
                                                       )   ORDER
13   vs.                                                )
                                                       )
14   NORTH LAS VEGAS POLICE                             )
     DEPARTMENT, et al.,                                )
15                                                      )
                               Defendant(s).            )
16   _____ )

17           Pending before the Court is Plaintiffs' motion to compel and for associated relief under Federal

18   Rule of Civil Procedure 37.  Docket No. 31.  Defendants filed a response, and Plaintiffs submitted a

19   reply.  Docket Nos. 33, 34.  Subsequently, the Court ordered Defendant North Las Vegas Police

20   Department ("NLVPD") to submit responsive documents for an *in camera* review, and Defendant

21   NLVPD complied.  The Court finds that this motion is appropriately resolved without oral argument.

22   *See* Local Rule 78-2.  For the reasons that follow, Plaintiffs' motion to compel is GRANTED in part

23   and DENIED in part.  Consequently, Plaintiffs' request for reasonable attorneys' fees and costs is

24   DENIED.

25                                            **BACKGROUND**

26           Plaintiffs allege that on September 14, 2012, Defendants executed a narcotics search warrant on

27   Plaintiffs' home.  Docket No. 3 at 5-6.  In the process, Defendants Snyder and Maalouf allegedly shot

28   and killed Plaintiffs' two dogs.  *Id*., at 6.

Plaintiffs' Complaint alleges that the killing constituted an unreasonable seizure under the Fourth Amendment to the United States Constitution, and asserts a claim against Defendants Snyder and Maalouf under 42 U.S.C. § 1983. They further allege a § 1983 policy-or-practice claim against Defendant NLVPD under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), contending that Defendant NLVPD has a practice of using unreasonable force on dogs during the execution of search warrants. *Id.*, at 10. In addition to the federal civil rights claims, Plaintiffs allege state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress. *Id.*, at 12-13.

The pending matter before the Court relates to four requests for production that Plaintiffs served on Defendant NLVPD. These requests sought two categories of documents: (1) Defendant NLVPD's internal affairs documents regarding prior incidents involving the use of force against dogs ("First Set of Requests"); and (2) Officers Snyder and Maalouf's personnel records ("Second Set of Requests"). *See* Docket Nos. 31 at 5-7; 34 at 13. Defendants objected to the First Set of Requests on the grounds that the information sought was irrelevant and privileged. Docket No. 31 at 6. Defendants objected to the Second Set of Requests on the grounds that the information sought was irrelevant and would violate the officers' right to privacy. Docket No. 31 at 6-7. As a result, Plaintiffs filed the motion to compel that is presently before the Court. Docket No. 31. After the matter was fully briefed, the Court ordered Defendants to submit the requested documents for an *in camera* review. Docket No. 37.[1]

## ANALYSIS

### I.    First Set of Requests

The Court has broad discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Rule 26[2] provides for the discovery of relevant, nonprivileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P.

---

[1]Defendants noted that no Internal Affairs documents existed that are responsive to Plaintiffs' request. Instead, in an effort to comply with the Court's order, Defendants produced Early Intervention System Firearm Discharge Reports, which are monitored by the Internal Affairs Bureau but not produced by it.

[2] Unless otherwise specified, references to "Rules" refer to the Federal Rules of Civil Procedure.

26(b)(1).  Relevance under Rule 26(b)(1) is liberally construed and is considerably broader than relevance for trial purposes.  *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351,(1978) (citation omitted).  For discovery purposes, "relevance includes matters that bear on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case."  *Id.*

Defendants dispute that Plaintiffs' First Set of Requests seeks relevant information.  Docket No. 33 at 3.  They argue that because there is "no evidence in the record at this point tending to show that [Defendant] NLVPD may have a custom or practice regarding the mishandling of animals[,]" Plaintiffs have failed to show they have a *Monell* claim at all and that the information they seek is relevant.  *Id.*

Lack of evidence is not a valid basis to resist discovery.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Coinstar, Inc.*, 2014 WL 3396124, at *2 (W.D. Wash. July 10, 2014).  Discovery itself is the process which serves as the vehicle for Plaintiffs to obtain the very evidence Defendants contend is lacking.  *Id.*  To permit a party to avoid discovery on this basis would lead to the tautology of denying a claim due to lack of evidence because discovery requests – the means of getting that evidence – were denied due to a lack of evidence.  Further, to the extent Defendants attack the sufficiency of Plaintiffs' *Monell* claim, the Court finds it inappropriate to rule on the merits of the claim in the context of a discovery dispute.  *See id.*

The Court finds that the First Set of Requests seeks relevant information.  *Monell* liability "may attach when an employee is acting pursuant to an expressly adopted official policy, long standing practice or custom, or as a final policymaker."  *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (citing *Monell*, 436 U.S. at 694).  The documents sought – records of prior incidents involving the use of force against dogs and Defendants' responses to them – are reasonably calculated to lead to discovery of admissible evidence.  They are relevant to determining the presence – or lack thereof – of a long-standing practice or custom involving the use of force against dogs, and, thus, are central to Plaintiffs' *Monell* claims.  Accordingly, the Court overrules Defendants' relevance objections.

The Court next turns to Defendants' privilege contentions.  Privileged information is not discoverable.  Rule 26(b)(1).  In a civil rights case brought under § 1983, questions of privilege are resolved by federal law.  *Cross v. Jaeger*, 2015 WL 1412845, at *4 (D. Nev. Mar. 27, 2015).  As a result, state law does not control the applicability of privilege here.  *Hooks v. Bannister,* 2014 WL

6772989, at *6 (D. Nev. Dec. 2, 2014).  Strong policy considerations underlie this choice of law, as other courts have explained:

> It . . . would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987).  In contrast to many state law privileges, "[f]ederal law governing privilege has not been codified." *Hooks*, 2014 WL 6772989, at *6. Rather, privileges have developed at common law. *Id.* (citing Fed. R. Evid. 501).

Federal courts recognize a qualified privilege for official information, into which courts incorporate the confidentiality interests embodied in some state law privileges. *Id.* (integrating confidentiality interests reflected in state administrative regulations into official information privilege analysis). For example, "[p]ersonnel files and complaints made against government employees have been considered official information." *Pinder v. Baker*, 2015 WL 540431, at *2 (D. Nev. Feb. 10, 2015) (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990)).

While Defendants' response does not actually use the words "official information privilege," they are essentially asserting this privilege in their invocation of the *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973) factors and their contention that "the Court should balance the government's interest in ensuring the secrecy of the documents in question against [Plaintiffs' need] to obtain the discovery." *Compare* Docket No. 33 at 4-6 *with Kelly*, 114 F.R.D. at 661 (weighing the same using the *Frankenhauser* factors).  Further, the affiant in support of Defendants' response evokes the official information privilege by name and cites *Kelly*.  *See* Docket No. 33 at 13.

"[C]ourts in the District of Nevada have adopted a protocol outlined in *Kelly* . . . that parties must comply with when asserting the official information privilege."  *Cross v. Jaeger*, 2015 WL 1412845, at *5 (D. Nev. Mar. 27, 2015) (collecting cases).  First, "[i]n order for the court to weigh the potential benefits and disadvantages of disclosure, the party asserting the privilege is required to submit a declaration or affidavit under oath and penalty of perjury from the head of the department that has control over the information." *Carrillo v. Las Vegas Metro. Police Dep't*, 2013 WL 592893, at *3 (D.

Nev. Feb. 14, 2013) (collecting cases).

Such a declaration must include:

(1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, and (5) a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Id.* Here, Defendant NLVPD submitted a declaration, but it fails to comply with the *Kelly* requirements. There is no indication that the affiant, Stephanie Easton, is the head of the department that has control over the information. *See* Docket No. 33 at 2, 13-15. Although any assertion of this privilege is procedurally defective on this basis alone, the Court further finds that substantive considerations do not warrant its application to these requests. *Carrillo*, 2013 WL 592893, at *3.

In determining whether the official information privilege applies, courts apply a balancing test that weighs the government's interest in secrecy against Plaintiffs' need to obtain discovery. *Id.* at *3-4. Courts in the District of Nevada consider the *Frankenhauser* factors in weighing these competing interests:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

*Id.* (citing *Kelly*, 114 at 663). The balance is "moderately pre-weighted in favor of disclosure." *Id.* at *3.

In this case, Plaintiffs assert a *Monell* claim against Defendant NLVPD based on its alleged custom, policy, or practice of permitting its officers to use unreasonable force on dogs during the execution of warrants. Defendants' findings, comments, and recommendations regarding these incidents

5

1   are central to Plaintiffs' claim.  Next, although the parties sharply dispute the merits of Plaintiffs'

2   *Monell* claim, neither party contends Plaintiffs' suit is frivolous or filed in bad faith.  As to the

3   proceeding two factors, Defendants assert that there "may" be continuing investigations or

4   intradepartmental disciplinary proceedings.  Docket No. 33 at 2.  However, neither their affiant's

5   declaration nor an *in camera* review of the documents provides support for this speculation.  Further,

6   Defendants do not address the implications of whether the information is factual or evaluative. Finally,

7   contrary to Defendants' contention that disclosure would result in an "obvious chilling effect," "*Kelly*

8   states that it is equally valid to assert that the investigating and responding officers' knowledge that their

9   statements and opinions may be disclosed and scrutinized in a subsequent judicial proceeding will

10  encourage them to conduct thorough and honest investigations." Docket No. 33 at 5; *Carrillo*, 2013 WL

11  592893, at *5.  It is unclear to what obvious chilling effect Defendants refer.  On balance, the Court

12  finds that the relevant *Frankenhauser* factors favor disclosure.

13      Next, citing *Ostoin v. Waterford Township Police Department*, 471 N.W. 2d 666 (Mich. App.

14  1991), Defendants argue that the deliberative process privilege categorically protects the requested

15  Internal Affairs records.  Docket No. 33 at 5.  However, Defendants' contentions regarding the

16  deliberative process privilege are misguided.

17      Application of that privilege here would stretch its policy rationale beyond recognition.  The

18  deliberative process privilege was designed "to help preserve the vigor and creativity of the process by

19  which government agencies formulate important public policies." *Kelly*, 114 F.R.D. at 658.  Because

20  its rationale should limit its reach, courts apply the deliberative process privilege only to

21  "communications designed to directly contribute to the formation of important public policy" and hold

22  that it "cannot operate at all when a plaintiff is pressing a non-frivolous challenge to the deliberative

23  process itself." *Id.* at 659.  "So limited, this privilege would offer no protection at all to most of the

24  kinds of information police departments routinely generate." *Id.*

25      Defendants' privilege contentions sweep so broadly that nearly all Internal Affairs data produced

26  by police departments would be presumptively shielded from disclosure.  Such an argument illustrates

27  "the dangers of importing into this arena doctrines that were developed in quite different settings to

28  protect government interests or promote policies that have little or no bearing on most of the kinds of

information generated by police departments." *Id.* Here, the requests seek documents relating to incidents involving the use of force on dogs and Defendant NLVPD's response to those incidents. The communications contained therein are not designed to directly contribute to the formation of important public policy. Rather, Plaintiffs seek the documents to evidence the existence of Defendant NLVPD's purported *de facto* policy itself. The underlying rationale behind the deliberative process privilege and the privilege itself are inapplicable.

**II.     Second Set of Requests**

Plaintiffs' Second Set of Requests seeks the personnel files of Defendants Snyder and Maalouf in their entirety. Docket No. 31 at 6-7. As in *Segura v. Reno*, 116 F.R.D. 42 (D. Nev. 1987), the Court has performed an *in camera* review of these Defendants' personnel files. Following that review, the Court finds that the documents include social security numbers, employment contracts, bank account information, payroll documents, irrelevant employment evaluations, personal addresses, driver's license numbers, family contact information, and tax records. As in *Segura*, the Court concludes that Plaintiffs have failed to make a showing that these Defendants' social security numbers, tax information, or family contact information are at all reasonably calculated to lead to admissible evidence.[3] *Id.* at 44. However, unlike in *Segura*, some of the employment files do contain relevant documents – incidents involving the use of force against dogs, which Defendant NLVPD found were justified. *Contra id.* (holding documents were irrelevant because officers were disciplined). The Court therefore finds the Second Set of Requests seeks some relevant information.

Next, Defendants contend that "federal law clearly supports their privacy objections on this issue." Docket No. 33 at 7. However, their response provides no authority that supports this contention and, instead, misquotes *Breed v. United States District Court for the Northern District of California*, 542 F.2d 1114 (9th Cir. 1976)[4] and cites *Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal.

---

[3]Although Plaintiffs initially requested these documents in their entirety, they now concede for the first time in reply that redactions would mitigate Defendants' concerns. *See* Docket No. 34 at 11.

[4]Defendants' response erroneously indicates that *Breed* states that courts "ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." Docket No. 33 at 7.

1   1987), which ultimately permitted discovery despite the defendants' privacy interests.  Docket No. 33

2   at 7.

3          Despite Defendants' misattribution, it is true that "[f]ederal courts ordinarily recognize a

4   constitutionally-based right of privacy that can be raised in response to discovery requests." *Keith H.*

5   *v. Long Beach Unified School Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005); *see Stallworth v. Brollini*,

6   288 F.R.D. 439, 444 (N.D. Cal. 2012) (noting that "the United States Supreme Court has recognized a

7   constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's

8   personal information").  However, this right is not absolute and is subject to balancing.  *Keith H. v. Long*

9   *Beach Unified School Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005) ("Resolution of a privacy objection

10  . . . requires a balancing of the need for the information sought against the privacy right asserted");

11  *Breed*, 542 F.2d at 1116 (balancing the invasion of minor's privacy rights against party's need for

12  children's California Youth Authority files).

13         With respect to the disclosure of police files, courts have recognized that "rights of privacy are

14  not inconsequential."  *Kelly*, 114 F.R.D. at 660.  However, these privacy interests must be balanced

15  against the great weight afforded to federal law in civil rights cases against police departments.  *Id.*

16  (noting that "through national legislation the people have made it clear that the policies that inform

17  federal civil rights laws are profoundly important").  Therefore, in cases involving police personnel

18  files, "district courts in the Ninth Circuit have found that the privacy interests police officers have in

19  their personnel files do not outweigh the civil rights [plaintiffs'] need for the documents." *Soto v. City*

20  *of Concord*, 162 F.R.D. 603, 617 (N.D. Cal. 1995) (collecting cases and concluding that "the existing

21  case law suggests that the privacy interests of police officers have not outweighed the civil rights

22  [plaintiffs'] need to discover the officer-defendants' personnel files").

23         Here, in applying this balancing test to the few relevant pages in Plaintiffs' requests, it is clear

24  that Plaintiffs' need for the documents outweighs any invasion of Defendants' privacy rights,

25  particularly under the limitations of the stipulated protective order.  As in *Soto*, Plaintiffs' "need for the

26  requested personnel files is great" because "the information contained [therein] . . . is unlikely to be

27  available from any other source[.]" *Id.*  In support of their privacy argument, Defendants deploy

28  citations to NRS 289.025 and NRS 289.030, even though "[t]he scope of an evidentiary privilege in a

8

42 U.S.C. § 1983 civil rights action is a question of federal law[.]" *Breed*, 542 F.2d at 1115.  NRS 289.025 and NRS 289.030 are inapposite, even assuming they applied, because the Court has found that the Officer Defendants' home addresses and financial information are irrelevant.  *See* NRS 289.025 (generally prohibiting disclosure of officers' home addresses); NRS 289.030 (generally prohibiting disclosure of officers' financial information).

Further, in this case, the "carefully drafted protective order . . . minimize[s] the impact of this disclosure."  *Soto*, 162 F.R.D. at 617 (citing *Kelly*, 114 F.R.D. at 666).  Defendants contend the stipulated protective order (Docket No. 21) is inadequate to protect the requested employment records because Plaintiffs are "unlikely to adhere" to it.  Docket No. 33 at 9.  In furtherance of this assertion, Defendants catalogue instances in which Plaintiffs "shared their opinions on social and public media" before the Court entered the protective order.  *Id.*  These contentions are inadequate to support an inference that Plaintiffs will violate this Court's protective order.

Consistent with other courts in the Ninth Circuit, the Court therefore finds that these Defendants' privacy interests in the limited relevant pages "have not outweighed the civil rights [Plaintiffs'] need to discover the [Defendants'] personnel files."  *Soto*, 162 F.R.D. at 617.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to compel is hereby GRANTED in part and DENIED in part.  Accordingly, the Court finds that Defendants' position was substantially justified and DENIES Plaintiffs' request for reasonable attorneys' fees and costs. Therefore,

    1.    **IT IS ORDERED** that, no later than December 17, 2015, Defendants shall produce Defendants' Production of Documents for *In Camera* Review Set Two to Plaintiffs, except for the Armorer's Inspection Check Lists – Bates 3,4, 19, 32, 33, 36, 37, 50, 51, 52, 53, 59, 60, 108, 109, 110, 112, 113 114, 115, 128, 132, 133 – which are irrelevant here as there is no allegation that any weapon malfunctioned.  Further, Defendants shall redact, prior to production, any personal information of any civilian person not a party to the instant case.

    2.    **IT IS FURTHER ORDERED** that, no later than December 17, 2015, Defendants shall produce all pages of documents detailing the use of force against dogs in Defendants'

Production of Documents for *In Camera* Review Set One to Plaintiffs; namely:

    A.    Page 1 of Officer Paul Maalouf's Employment Evaluation Report for the Period of 2012–2013;

    B.    Page 1 of Officer Travis Snyder's Employment Evaluation Report for the Period of 2010–2011;

    C.    Page 1 of Officer Travis Snyder's Employment Evaluation Report for the Period of 2009–2010.

3.    IT IS FURTHER ORDERED that Plaintiffs' additional requests are DENIED.

DATED: December 8, 2015

_____
NANCY J. KOPPE
United States Magistrate Judge