UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Thomas Walker, et al.,

    Plaintiffs

v.

City of North Las Vegas, et al.,

    Defendants

2:14-cv-01475-JAD-NJK

**Order Denying Motions to Reconsider Orders Quashing Subpoenas**

[ECF Nos. 132, 133[1]]

Thomas Walker and Cathy Cataldo sue the North Las Vegas Police Department (NLVPD) and officers Paul Maalouf and Travis Snyder for shooting their pet pit bulls while executing a search warrant at their home. Walker and Cataldo claim that the NLVPD has a "policy and practice of allowing" its officers to kill the pet dogs of search-warrant targets.[2] And in the course of this litigation, they served subpoenas on the police departments in neighboring Las Vegas and Henderson, Nevada, seeking a broad swath of documents (including search-warrant-execution records, policies and procedures, and training materials) related to dogs. Both departments moved to quash those subpoenas as seeking irrelevant information and imposing an undue burden on these non-parties.[3] Magistrate Judge Nancy Koppe found the requested information irrelevant to this litigation and granted those motions.[4]

Walker and Cataldo move for reconsideration. Because Walker and Cataldo have not shown that Judge Koppe's orders quashing the subpoenas were clearly erroneous or contrary to law, I deny the motions for reconsideration.

---

[1] I find these motions suitable for disposition without oral argument. L.R. 78-1.

[2] ECF No. 88 at ¶ 13.

[3] ECF Nos. 116 (Henderson), 117 (LVMPD), 118 (amended LVMPD motion).

[4] ECF Nos. 125 (Henderson), 131 (LVMPD).

**Background**

NLVPD officers shot and killed Walker and Cataldo's two pet pit bull dogs during the 2012 execution of a search warrant at the couple's home.[5] Walker and Cataldo sue for violation of their Fourth and Fourteenth Amendment rights, and they assert state-law tort claims for negligent training, supervision, and retention, intentional infliction of emotional distress, and negligent infliction of emotional distress.[6]

During the course of discovery, Walker and Cataldo served subpoenas on the City of Henderson and the Las Vegas Metropolitan Police Department (LVMPD) asking for seven years of records, training materials, policies, and procedures related to dogs and animal control.[7] Both departments filed motions to quash, arguing that the subpoenas seek information irrelevant to this lawsuit against the NLVPD and that compliance with them would be unduly burdensome.[8] Magistrate Judge Koppe found the requested materials irrelevant and granted the motions. She reasoned:

> This entire case revolves around an alleged incident that involved the North Las Vegas Police Department not the Henderson Police Department [or LVMPD]. Indeed, the only two references to the Henderson Police Department in Plaintiffs' second amended complaint involve entirely different incidents [and does not mention LVMPD at all]. . . . Whether, as Plaintiffs submit, "neighboring municipalities" may have experienced "instances of police use of force against dogs," is simply irrelevant to whether this issue has affected the relevant municipality in this action, the City of North Las Vegas.[9]

Walker and Cataldo move for reconsideration.[10] They argue that the touchstone of several of their claims is reasonableness and whether the officers were properly trained, and that "records from other jurisdictions will provide a frame of reference and offer comparison" for the NLVPD officers'

---

[5] ECF No. 88 at ¶ 45.

[6] *Id.* at ¶¶ 43–66.

[7] *See* ECF No. 116 at 16–21 (Henderson subpoena); ECF No. 118 at 10–13 (LVMPD subpoena).

[8] *See* ECF Nos. 116 (Henderson), 118 (amended LVMPD motion).

[9] ECF Nos. 125, 131.

[10] ECF Nos. 132, 133.

actions.[11] They note that defendants' expert—who claims that he is "familiar with training that some officers receive, but is not mandated throughout the country"—has opined that "the recognized and accepted practice trained by similarly situated SWAT officers, would be to apply deadly force to the dogs."[12]

The City of Henderson responds that the plaintiffs have not shown why this municipality's policies, practices, or procedures would have any bearing on the reasonableness of the NLVPD officers in this case. All departments are independent and behave differently.[13] Plaintiffs have not established that all agencies in a particular region share the same policies, practices, or procedures, or that the failure of NLVPD to mirror another jurisdiction's model would be legally significant.[14] Regardless, whether the defendants in this case acted constitutionally is a fact-intensive determination based on the totality of the circumstances that the officers faced.[15] And how a City of Henderson officer responded in any other situation will provide no benchmark.

LVMPD offers a similar response.[16] It argues that, because the focus of the plaintiffs' claims is whether the officers' conduct was "objectively reasonabl[e] in light of the facts and circumstances *confronting the officers*," "and LVMPD had no involvement whatsoever, any information from LVMPD is entirely irrelevant to" their claims.[17] It adds that these law-enforcement agencies are distinct entities, "each with their own policies and procedures" with no relationship to one another.

---

[11] ECF No. 132 at 10.

[12] ECF No. 133 at 10.

[13] ECF No. 134.

[14] *Id*.

[15] *Id*.

[16] ECF No. 140.

[17] *Id*. at 6.

# Discussion

## A. Standard of Review

A district judge may reconsider any pretrial order of a magistrate judge if it is "clearly erroneous or contrary to law."[18] The clearly erroneous standard applies to a magistrate judge's findings of fact.[19] "A finding is clearly erroneous when[,] although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[20] A magistrate judge's order "is contrary to law when it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure."[21] The district judge "may affirm, reverse, or modify" the ruling made by the magistrate judge, or remand the ruling to the magistrate judge with instructions.[22]

## B. The plaintiffs have not demonstrated that the magistrate judge's orders quashing the subpoenas were clearly erroneous or contrary to law.

Magistrate Judge Koppe's conclusion that the information subpoenaed from the City of Henderson and the LVMPD was not relevant to Walker and Cataldo's case was not clearly erroneous or contrary to law. Rule 45 of the Federal Rules of Civil Procedure allows litigants to subpoena documents from non-parties.[23] A litigant's power to obtain documents by subpoena is not unlimited. "It is well established that the scope of discovery under a subpoena issued pursuant to Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)."[24] Rule 26 (b)(1) limits discovery to

---

[18] 28 U.S.C. § 636(b)(1)(A).

[19] *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623 (1993).

[20] *Id.* at 622 (internal quotation marks and citation omitted).

[21] *Glob. Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*, No. 3:11–cv–00793, 2012 WL 3884939, at *3 (D. Nev. Sept. 6, 2012).

[22] L.R. I.B. 3–2.

[23] Fed. R. Civ. P. 45.

[24] *Painters Joint Comm. v. Emp. Painters Tr. Health & Welfare Fund*, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011).

"nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ."[25] Relevancy to the subject matter of the litigation "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[26] But relevance alone does not establish discoverability. In 2015, a proportionality requirement was added to Rule 26. "The fundamental principle of amended Rule 26(b)(1) is 'that lawyers must size and shape their discovery requests to the requisites of a case.'"[27] Although the party who moves to quash has the burden of persuasion under Rule 45(c)(3), "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."[28]

The City of Henderson and the LVMPD demonstrated that the information that the plaintiffs seek falls outside of the scope of permissible discovery.[29] The policies and procedures that these unrelated agencies have adopted, the training that they've provided their officers, and the actions that their officers have taken when encountering dogs do not bear on, and are not proportionate to, the needs of this case. Knowing how the City of Henderson and LVMPD (or any other law-enforcement agencies for that matter) operate is unnecessary to answer the questions posed in this case because each of the plaintiffs' claims requires a fact-intensive analysis centered on these circumstances.

As the Ninth Circuit explained in *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*,[30] "[t]he killing of a dog is a destruction recognized as a seizure under the Fourth

---

[25] Fed. R. Civ. P. 26(b)(1).

[26] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[27] *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (quoting John Roberts, 2015 Year-End Report on the Federal Judiciary (Dec. 31, 2015), available at http://www.supremecourt.gov/publicinfo/year-end/2015year-endreport.pdf).

[28] *Monge v. Maya Magazines, Inc.*, 2010 WL 2776328, *4 (D.Nev. July 14, 2010) (quoting *Green v. Baca*, 226 F.R.D. 624, 654 (C.D.Cal.2005) (citation omitted)).

[29] *See* ECF Nos. 116, 118.

[30] *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005).

Amendment," and the court "look[s] to the totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officer's duties."[31] To perform this analysis, the court must "balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"[32] Other municipalities' records, policies, and procedures will not inform that analysis. Nor will they inform the analysis of the plaintiffs' state-law tort claims, all of which turn on the specific conduct of the defendants under the circumstances.[33]

The same holds true for defendants' qualified-immunity defense. As the plaintiffs acknowledge in their motion for reconsideration, "The linchpin of the qualified immunity analysis is the reasonableness of the officer's conduct *in the particular case at hand*."[34] And although the qualified-immunity question may also be framed as whether "'every reasonable official' would have understood that he was violating a clearly established right,"[35] "the law does not imply, however, that police officers are the ultimate arbiters of constitutional questions. The lawfulness of their conduct does not turn on whether all, or most, officers think that the law is clearly established."[36] So a survey

---

[31] *Id.*

[32] *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[33] *See Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996) (noting that "the employer has a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions," and focusing on whether employer knew of the employee's actions or negligently trained, supervised and retained employee in light of the known facts and circumstances); *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000) (intentional infliction of emotional distress requires proof of: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation;" and negligent infliction of emotional distress is similarly targeted at the underlying circumstances and also requires a showing of "'serious emotional distress' causing physical injury or illness").

[34] ECF No. 133 at 8 (quoting *Rosenbaum v. Washoe Cty.,* 663 F.3d 1071, 1078 (9th Cir. 2011) (emphasis added)).

[35] *Rosenbaum*, 663 F.3d at 1078.

[36] *Id.* at 1078 n.2.

of neighboring police departments on their policies, practices, and procedures is unnecessary to resolve the qualified-immunity question.

Even if I could conclude that the methods employed by other law-enforcement agencies may have some relevance to the claims or defenses in this case because, as plaintiffs argue, how other agencies and officers train and act "will provide a frame of reference and offer comparison for the reasonableness (or lack thereof) of Defendants' actions and North Las Vegas'[s] policies and procedures for the use of force against dogs,"[37] the plaintiffs have not demonstrated that *these* two agencies—as opposed to any other law-enforcement agency in the state or country—should be the yardsticks against which the defendants' conduct should be measured. I therefore find that the magistrate judge's orders quashing the subpoenas were not clearly erroneous or contrary to law.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Requests to Reconsider the Magistrate Judge's Orders Quashing Subpoenas **[ECF Nos. 132, 133] are DENIED**.

Dated this 9th day of February, 2018.

_____
U.S. District Judge Jennifer A. Dorsey

---

[37] ECF No. 133 at 10.